OPINION *Page 2 
{¶ 1} On February 16, 2005, Appellant, Mary Gibson, filed a complaint against Appellees, Park Poultry, Inc., North Preston Farm, Inc., and A J Real Estate Partnership. A J Real Estate owns property for six chicken grow-out facilities. One facility is North Preston Farm, which raises chickens for Park Poultry. North Preston Farm is located across the street from appellant's home. The complaint alleged nuisance, trespass, and negligence in the operation of the facility, causing property damage and bodily injury via insect, beetle, and rodent infestation, noxious and offensive odors, and pollution of waterways, soil, and air.
 {¶ 2} On June 14, 2006, appellees filed a motion for summary judgment. By judgment entry filed September 20, 2006, the trial court granted the motion, finding appellant's claims for nuisance, trespass and negligence regarding property damage and bodily injury were barred by the statute of limitations.
 {¶ 3} Appellant filed an appeal and this matter is now before this Court for consideration.
 ASSIGNMENTS OF ERROR {¶ 4} "I. THE TRIAL COURT ERRED IN DETERMINING AS A MATTER OF LAW THAT THE STATUTE OF LIMITATIONS HAD RUN ON APPELLANT'S NUISANCE CLAIM. AT THE VERY LEAST, A JURY QUESTION EXISTS AS TO WHETHER THE CHICKEN RAISING FACILITY IS A CONTINUING NUISANCE."
 {¶ 5} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES AND DETERMINING AS A MATTER OF LAW THAT THE STATUTE *Page 3 
OF LIMITATIONS HAD RUN WHERE APPELLANT SUFFERED FROM A LATENT INJURY THAT WAS NOT DIAGNOSED UNTIL THE LAWSUIT WAS FILED."
 {¶ 6} These assignments of error will be considered under a summary judgment standard of review. Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins,75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 7} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 8} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 I. {¶ 9} Appellant claims the trial court erred in determining her nuisance claims were barred by the statute of limitations. Specifically, appellant claims the operation of *Page 4 
the chicken facility constitutes a continuing nuisance as opposed to a permanent nuisance and therefore, the statute of limitations does not apply. We disagree.
 {¶ 10} A permanent nuisance is governed by a four year statute of limitations as set forth in R.C. 2305.09, and "occurs when the defendant's tortious act has been fully accomplished but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant." Weir v. East Ohio Gas Company, Mahoning App. No. 01 CA 207, 2003-Ohio-1229, ¶ 18. For a continuing nuisance, the statute of limitations is tolled, as "the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights." Id.
 {¶ 11} In its September 20, 2006 judgment entry granting summary judgment to appellees on appellant's nuisance claims, the trial court found the operation of the facility was a permanent nuisance as opposed to a continuing nuisance:
 {¶ 12} "The Court finds that the facts in this case and the nature of the Defendants' operations do not support a finding that the alleged nuisance is continuing. The Court finds that the Defendants' alleged tortious act was completed when it located and constructed the North Preston facility within 650 feet of Plaintiff's home in 1991. By Plaintiff's own admission, the alleged air pollution is of a permanent nature in that the pollution caused by the Defendants' operations is `always there' and is not practicably abatable without closing down the North Preston facility. (Plaintiff's Depo. at pp. 125-126.) Further, the Court finds that the alleged lights and noise from the tractor trailers are a constant consequence of the Defendants' operations.
 {¶ 13} "Accordingly, the Court finds that the four year statute of limitations applies to Plaintiff's alleged nuisance claims and therefore, the statute of limitations began to *Page 5 
run when the alleged nuisance fist (sic) occurred, i.e. upon the construction and commencement of operations at the North Preston facility in 1991. * * *"
 {¶ 14} Although appellant argues the trial court disregarded some of the facts, as noted in her brief at 20, we nonetheless find, under our de novo standard of review, the facts are undisputed as to whether the operation of the chicken facility was a permanent or continuing nuisance. Our inquiry is whether the operation of the facility is a permanent or continuing nuisance. For the purpose of this inquiry alone, because it involves a statute of limitations issue, nuisance is presumed.
 {¶ 15} Appellant's February 16, 2005 complaint alleged the following in pertinent part:
 {¶ 16} "14. Since 1991, Defendants have willfully, recklessly, and/or negligently failed to properly manage the storage and spreading of the manure and have willfully, recklessly, or negligently failed to properly store the chemicals.
 {¶ 17} "15. On a regular basis since 1991, Defendants have caused thousands of pounds of dust, chicken feathers, manure, and skin particles to be emitted into the air. The dust, feathers, manure and skin particles settled on Mrs. Gibson's property.
 {¶ 18} "17. Defendants' negligent failure to properly manage the storage and spreading of the manure has resulted in the introduction of millions of flies, insects and rodents that breed at and/or are attracted to the Chicken Farm annually since 1991.
 {¶ 19} "21. Because of Defendants' negligent failure to properly manage the storage and spreading of the manure and to properly manage the Chicken Farm, Defendants have produced unreasonably noxious and offensive odors since 1991. *Page 6 
 {¶ 20} "22. Defendants' dissemination of thousands of pounds of dust, chicken feathers, manure, and skin particles into the air each day has produced unreasonably noxious and offensive odors since 1991.
 {¶ 21} "24. Defendants' dissemination of thousands of pounds of dust, chicken feathers, manure, and skin particles into the air each day has resulted in contamination of the air on and around Plaintiff's property since 1991.
 {¶ 22} "25. Defendants' negligent failure to properly manage the storage and spreading of manure at the Chicken Farm and to properly manage the storage of chemicals at the Chicken Farm has caused contaminants to enter the water supply on Plaintiff's property and the soil of Plaintiff's property since 1991.
 {¶ 23} "26. The contaminants released into the air, waterways, and soil on or abutting Plaintiff's property has been and continues to be the direct and proximate cause of injury to Plaintiff both personally and in the use and enjoyment of her property and home."
 {¶ 24} All of these alleged facts are incorporated by reference into all counts of the complaint.
 {¶ 25} Appellant argues the nuisance is "temporary or recurrent * * * or is abatable by reasonable means" and therefore, the statute of limitations does not bar her claims. Brown v. Scioto County Board ofCommissioners (1993), 87 Ohio App.3d 704, 718. She argues the stench and dust are recurrent, and come and go in accordance with the six week growth cycle of the chickens, the number of chickens housed in the barns, and the weather conditions. See, Gibson aff. at ¶ 8, 9 and 10, attached to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment as Exhibit A. Appellant *Page 7 
argues the chicken facility is not like a factory that bellows out smoke continuously. We disagree with this analysis.
 {¶ 26} In Brown, supra, at 718, our brethren from the Fourth District held the following:
 {¶ 27} "It has long been the policy of the law to require that actions involving allegations of tortious conduct be asserted promptly.Lawyer's Coop. Publishing Co. v. Muething (1992), 65 Ohio St.3d 273,280, 603 N.E.2d 969, 974. Where a nuisance in the form of air pollution is permanent in that the structure giving rise to the pollution is of a permanent nature, pollution is consistently produced and is not practicably abatable, the statute of limitations begins to run at the time that the nuisance begins or is first noticed, provided that the permanent nature of the nuisance can be ascertained at that time. Annotation, When Statute of Limitations Begins to Run as to Cause of Action for Nuisance Based on Air Pollution (1983), 19 A.L.R.4th 456, 459-460, Section 2[a]; Louisville Brick Tile Co. v. Calmelat (1917), 6 Ohio App. 435. Conversely, where an air pollution nuisance is temporary or recurrent in that the pollution is not constant consequence of the operation or is abatable by reasonable means, a nuisance action can be brought for damages for those injuries incurred within the applicable period, regardless of when the nuisance began. Annotation,supra, at 460, Section 2[a]."
 {¶ 28} Appellees are in the business of raising chickens for sale and as such, the entire process is composed of various steps. These steps are repeated during each cycle of new chickens, and are part of the chicken farm process. Just as smokestacks take a break during temporary shutdowns for repair, so too does the process of growing *Page 8 
chickens for sale. The process has been in existence since the completion of the poultry barns, and if any nuisance was produced, it began in 1991.
 {¶ 29} Upon review, we find the alleged nuisances are permanent in nature; therefore, the requirements of R.C. 2305.09 are applicable and mandate dismissal. The trial court did not err in granting summary judgment to appellees on appellant's nuisance claims.
 {¶ 30} Assignment of Error I is overruled.
 II. {¶ 31} Appellant claims the trial court erred in dismissing her personal injury claims based upon a two year statute of limitations because the discovery rule applies sub judice. We disagree.
 {¶ 32} Appellant claims her diagnoses of upper airways cough syndrome and reactive airways disease were caused by the chicken facility and the causation of her illnesses was not learned until 2006; therefore, the discovery rule applies. See, Burgess v. Eli Lilly Co., 66 Ohio St.3d. 59, 1993-Ohio-193.
 {¶ 33} Pursuant to R.C. § 2305.10, a claim for bodily injury must be brought within two years of accrual. However, in O'Stricker v. JimWalter Corporation (1983), 4 Ohio St. 3d 84, 90, the Supreme Court of Ohio announced the "discovery rule" for bodily injury claims:
 {¶ 34} "When an injury does not manifest itself immediately, the cause of action arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable *Page 9 
diligence, he should have become aware that he had been injured, whichever date occurs first."
 {¶ 35} Based on the foregoing, the issue of whether or not the two-year statute of limitations had expired by the time Appellant filed her complaint turns on when she "discovered" her claimed injuries. This question can be answered by way of statements made by Appellant and contained in the record.
 {¶ 36} In her affidavit at ¶ 12, appellant admitted she had developed various illnesses since the inception of the chicken facility and was suspicious of their origins, but her suspicions were never confirmed:
 {¶ 37} "I have experienced on-going sickness, pulmonary and respiratory problems, and eye infections throughout the time that the North Preston CAFO has been located across the street. I have suspected that my injuries have been associated with the airborne contaminants; however, no physician or medical authority informed me that the emissions from the CAFO caused my injuries until my property was evaluated by Dr. O'Shaughnessy, and I was examined by Dr. Mastronarde and Dr. Randall Harris after this lawsuit was filed. Dr. Harris' letter is attached at Exhibit B."
 {¶ 38} In its September 20, 2006 judgment entry, the trial court found appellant "knew or by the exercise of reasonable diligence, should have known" she was injured by appellees' conduct:
 {¶ 39} "Based upon the definition adopted by the Ohio Supreme Court, the Court finds that the Plaintiff did not exercise `reasonable diligence' to ascertain whether there was causation between her bodily injuries and the Defendants' conduct at any time prior to the filing of the instant action. Plaintiff's alleged bodily injuries, which Plaintiff *Page 10 
suspected were a result of the Defendants' operations, started in 1991. At that time, based upon the Plaintiff's testimony, she never asked her physicians or medical practitioners whether there could be a causal connection, even though she suspected that there may be a causal connection and complained to the Board of Health that `whatever they were doing across the street was causing me to be irritated' or causing her to have difficulty breathing. (Plaintiff's Depo. at p. 43.)"
 {¶ 40} Upon review, we find that appellant was first diagnosed with asthma in 1991, the year the chicken facility started operating. Gibson depo. at 47. Although she never asked her physicians as to any causal connection between such illness and appellee's operations, appellant readily admitted that she had suspected that her health problems were caused by her proximity to the chicken plant and that she sent the above-referenced letter to the Health Department in support of same.
 {¶ 41} The Sixth District, in Charter One Bank v. Hamburger, etal., Sixth Dist. App. No. L-01-1332, 2002-Ohio-745, addressed this issue in a case involving "sick building syndrome". In said case, the plaintiff "admitted to believing for the past five years that there was a connection between her health issues and the problems with the house, and stated: `Since 1995, I have experienced health problems which I have always suspected emanated from moisture and mold problems in my home caused by improper construction; these problems began as fatigue, and gradually came to include serious respiratory and other problems.'"
 {¶ 42} The appellant in Hamburger argued that the discovery rule tolled the statute of limitations in her case because she did not learn of the connection between *Page 11 
her health problems and the house until she received a diagnosis from the Mayo Clinic in 1999.
 {¶ 43} The Sixth District held that appellant, by her own admission, had made a connection in her own mind as early as 1995 between health problems she was experiencing and problems such as water infiltration, insects, mold and toxins in the house. The court found that the fact that appellant did not receive a diagnosis of "probable sick building syndrome" until 1999 did not eclipse her own acknowledgment as early as 1995 of illness which she attributed to the conditions in the house.
 {¶ 44} In the case sub judice, appellant had made a connection in her own mind as early as 1991 between the health problems she was experiencing and the chicken plant. Based on Hamburger, supra, the fact that she has yet to receive a diagnosis substantiating same does not eclipse her own acknowledgment that as early as 1991 she was experiencing illness which she attributed to the chicken plant.
 {¶ 45} This Court therefore finds that the trial court did not err in dismissing appellant's personal injury claims finding that such claims were time-barred. *Page 12 
 {¶ 46} Accordingly, we find appellant's second assignment of error is not well-taken and overrule same.
 {¶ 47} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 By: Wise, J. Delaney, J., concurs. Farmer, P. J., dissents. *Page 13