[Cite as *Schmitz v. Natl. Collegiate Athletic Assn.*, 2016-Ohio-8041.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 103525

---

# STEVEN SCHMITZ, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-834486

**BEFORE:** Boyle, J., Jones, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 8, 2016

**ATTORNEYS FOR APPELLANTS**

Robert E. Derose
Neal J. Barkan
Barkan Meizlish Handelman Goodin Derose Wentz, L.L.P.
250 East Broad Street
10th Floor
Columbus, Ohio    43215

Melanie J. Garner
David D. Langfitt
Locks Law Firm
The Curtis Center
601 Walnut Street
Suite 720 East
Philadelphia, Pennsylvania    19106

Richard S. Lewis
Hausfeld, L.L.P.
1700 K. Street, N.W.
N.W. Suite 650
Washington, D.C. 20006


**ATTORNEYS FOR APPELLEES**

**For National Collegiate Athletic Association**

Frederick R. Nance
Sean L. McGrane
Squire Patton Boggs (US), L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio    44114

**For University of Notre Dame du Lac**

Steven A. Friedman
Squire Patton Boggs (US) L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio    44114

Aaron Michael Healey
Matthew A. Kairis
Jones Day
P.O. Box 165017
Columbus, Ohio    43216

MARY J. BOYLE, J.:

{¶1}  Plaintiffs-appellants, the estate of Steven T. Schmitz and Yvette Schmitz, individually and as fiduciary of the estate of Steven T. Schmitz, deceased (collectively "plaintiffs"), appeal the trial court's decision granting the motions to dismiss filed by defendants-appellees, the University of Notre Dame du Lac ("Notre Dame") and the National Collegiate Athletic Association ("the NCAA") (collectively "defendants"). Plaintiffs raise the following single assignment of error:

> The trial court erred by granting the motions to dismiss, because the complaint's allegations are sufficient to state each claim, and the complaint does not conclusively show on its face that plaintiffs-appellants' claims are barred by the statute of limitations.

{¶2}  Finding some merit to the appeal, we affirm in part, reverse in part, and remand for further proceedings.

## I.  Procedural History and Factual Background

{¶3}  From 1974 to 1978, Steven Schmitz, a former running back and receiver, played football for Notre Dame, a member institution of the NCAA.[1]  In December 2012, Schmitz was diagnosed by the Cleveland Clinic Neurology Department with chronic traumatic encephalopathy ("CTE") — a latent brain disease caused by repetitive head impacts.  At that time, Schmitz was 57 years old and unemployable, suffering from severe memory loss, cognitive decline, early onset Alzheimer's disease, traumatic encephalopathy, and dementia.

---

[1]  All of the facts set forth in this opinion are taken from plaintiffs' first amended complaint.

**{¶4}** In October 2014, Schmitz and his wife, Yvette Schmitz, filed the underlying lawsuit against Notre Dame and the NCAA. According to plaintiffs' first amended complaint ("complaint"), which is the subject of this appeal,

> Notre Dame, its football coaches, athletic directors, and trainers, and the NCAA failed to notify, educate, and protect the plaintiff Steve Schmitz (and others) regarding the debilitating long term dangers of concussions, concussion-related impacts, and sub-concussive impacts that result every day from amateur athletic competition in the form of football at the collegiate level.

**{¶5}** The complaint alleges that Notre Dame and the NCAA knew (or should have known) "college football players are at greater risk for chronic brain injury, illness, and disability both during their football careers and later in life." And that, despite this knowledge, Notre Dame and the NCAA "orchestrated an approach to football practices and games" that (1) "ignored the medical risks to Steve Schmitz"; (2) "aggravated and enhanced the medical risks to Steve Schmitz"; (3) "failed to educate Steve Schmitz of the link between concussive and sub-concussive impacts in amateur football and chronic neurological damage, illnesses, and decline"; and (4) "failed to implement or enforce any system that would reasonably have mitigated, prevented, or addressed concussive and sub-concussive impacts suffered by Steve Schmitz." The complaint sets forth counts for negligence, fraud by concealment, constructive fraud, breach of express and implied contract, and loss of consortium.

**{¶6}** In March 2015, defendants moved to dismiss plaintiffs' amended complaint. Specifically, Notre Dame moved to dismiss the amended complaint on the grounds that plaintiffs' claims are time-barred. The NCAA moved to dismiss the

claims on both statute of limitations grounds and failure to state a claim under Ohio or Indiana law.

{¶7} Schmitz died on February 13, 2015. Thereafter, the estate of Steven Schmitz was substituted as a plaintiff as well as Yvette Schmitz as fiduciary of her husband's estate and in her personal capacity.

{¶8} On September 1, 2015, the trial court granted both Notre Dame's and the NCAA's motion to dismiss without opinion and dismissed the amended complaint with prejudice. This appeal follows.

## II. Civ.R. 12(B)(6) — Standard of Review

{¶9} We review an order dismissing a complaint for failure to state a claim for relief under Civ.R. 12(B)(6) de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. However, while the factual allegations of the complaint must be taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 544 N.E.2d 639 (1989). For a defendant to prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a court in granting relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327

N.E.2d 753 (1975). "Under these rules, a plaintiff is not required to prove his or her case at the pleading stage. * * * Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

{¶10} Additionally, under Ohio's liberal pleading rules, all that is required of a plaintiff bringing suit is "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A). Unlike other claims, however, fraud claims must be plead with particularity as required under Civ.R. 9(B).

## III. Statute of Limitations

{¶11} While the parties dispute the governing state substantive law that applies to plaintiffs' claims — Indiana or Ohio — there is no dispute that Ohio, the forum state, provides the applicable statute of limitations. *See Howard v. Allen*, 30 Ohio St.2d 130, 133, 283 N.E.2d 167 (1972) ("[L]imitation provisions are remedial in nature, and are therefore controlled by the law of the forum."). Both Notre Dame and the NCAA moved to dismiss the complaint on the basis that Ohio's statute of limitations had run on all of plaintiffs' claims. We first examine this issue applying Ohio law.

{¶12} Plaintiffs argue that the trial court erred in dismissing their complaint as being time-barred. Plaintiffs maintain that the complaint pleads a latent undiscoverable injury that became manifest decades after Schmitz played football and that the complaint

does not on its face show beyond doubt that plaintiffs cannot recover based on a statute of limitations defense. According to plaintiffs, the trial court erred in failing to apply the discovery rule, which would have tolled their claims until December 2012 — the date when they became aware of the injury and the cause of the injury. Because they filed their original complaint approximately 18 months after learning of the diagnosis, they argue that their claims were timely and well within (1) the two-year limitation period for their negligence personal injury claim under R.C. 2305.10, (2) the four-year limitation period for their fraud claim as contained in R.C. 2305.09, and (3) the 15- and six-year period for their express written and implied contract claims as contained in R.C. 2305.06 and 2305.07.

### A. Purpose of Statute of Limitations

{¶13} "Statutes of limitations serve a gate-keeping function for courts by '(1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay — specifically, the difficulties of proof present in older cases.'" (Citations omitted.) *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 7. Nevertheless, "statutes of limitations are remedial in nature and are to be given a liberal construction to permit cases to be decided upon their merits, after a court indulges every reasonable presumption and resolves all doubts in favor of giving, rather than denying, the plaintiff an opportunity to

litigate." *Id.* at ¶ 7; *Harris v. Reedus*, 2015-Ohio-4962, 50 N.E.3d 1036, ¶ 11 (10th Dist.).

## B. Discovery Rule

**{¶14}** Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. *Collins v. Sotka*, 81 Ohio St.3d 506, 507, 692 N.E.2d 581 (1998). The discovery rule, however, is an exception to this general rule and provides that "a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the conduct of the defendant." *Flagstar Bank* at ¶ 14, citing *Collins* at *id*. "The rule entails a two-pronged test — i.e., actual knowledge not just that one has been injured but also that the injury was caused by the conduct of the defendant." *Id.*, citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983). A statute of limitations does not begin to run until both prongs have been satisfied. *Id.*

**{¶15}** The first issue that we must decide is whether the discovery rule applies to plaintiffs' claims.

### 1. Contract Claims

**{¶16}** With respect to plaintiffs' contract claims, we find that it does not. As plaintiffs even acknowledge, no Ohio court has ever applied the discovery rule to a claim for a breach of contract. *See Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 41 (10th Dist.) (recognizing this fact and refusing to be the first court to do so). Indeed, this court has expressly rejected the application of such rule to a

contract claim. *See Pomeroy v. Schwartz*, 8th Dist. Cuyahoga No. 99638, 2013-Ohio-4920, ¶ 39.

{¶17} Here, based on the allegations of the complaint, any breach arising out of an express or implied contract must have occurred during the time that Schmitz attended Notre Dame — in or before 1978. Without the benefit of the discovery rule, plaintiffs' breach of contract claims are barred by the statute of limitations contained in R.C. 2305.06 and 2305.07, which require a plaintiff to bring a contract claim within 15 years (express written contract) or six years (implied contract) of the alleged breach of the contract.[2] Because those claims are time-barred, we find no error in the trial court's dismissal of those claims.

### 2. Personal Injury/Negligence Claim

{¶18} Unlike contract claims, Ohio courts have routinely applied the discovery rule to negligence personal injury claims. *See Flagstar Bank,* 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, at ¶ 15. While defendants do not dispute this point, they nonetheless argue that the discovery rule does not apply in this case. We disagree.

### a. Date of Discovery of Injury and Type of Injury

{¶19} According to defendants, the discovery rule has been applied only in limited circumstances involving latent injuries and not when a plaintiff's injury was immediately apparent, such as the instant case. In their motions to dismiss, defendants

---

[2] Although R.C. 2305.06 was amended in 2012 to change the statute of limitations for written contract claims to eight years, the 15-year statute applies to claims that accrued prior to September 28, 2012.

maintained that the complaint does not allege facts supporting a latent injury case. Instead, the defendants argued that the complaint plainly alleges that Schmitz experienced concussion symptoms and knew he suffered some type of injury while playing football at Notre Dame in the 1970s. Consequently, the defendants contended that the plaintiffs' claims are time-barred because the claims accrued nearly 40 years ago, at the time that Schmitz alleged he was injured.

{¶20} Conversely, plaintiffs maintained that defendants' argument misconstrues the allegations of the complaint. According to plaintiffs, they pleaded that Schmitz suffered from latent brain disease and discovered its cause and diagnosis later in life when the symptoms became manifest and the condition was diagnosed by the Cleveland Clinic Foundation. Plaintiffs argued that these allegations support the application of the discovery rule.

{¶21} Although this issue is one of first impression in Ohio, other courts have recently addressed substantially similar arguments in analogous cases involving latent brain injuries suffered by former professional hockey players and former professional stunt wrestlers. *See In re NHL Players' Concussion Injury Litigation*, D.Minn. No. 14-2551, 2015 U.S. Dist. LEXIS 38755 (Mar. 25, 2015); *McCullough v. World Wrestling Entertainment, Inc.*, D.Conn. Nos. 3:15-CV-001074, 3:15-CV-00425, and 3:15-CV-01156, 2016 U.S. Dist. LEXIS 39791 (Mar. 21, 2016). These courts rejected defendants' claims that the statute of limitations accrued at the time of the concussive and subconcussive impacts, recognizing that plaintiffs' alleged injuries in the form of an

increased risk of developing neurodegenerative diseases, such as CTE, are distinctly different than the head injuries they sustained while playing the sport. As explained by the Connecticut district court in the wrestling case:

> The mere fact that the Pre-2012 Plaintiffs allege that they sustained concussions and head trauma during their tenure with the WWE; and that they allege awareness of those concussions and possible concussion-like symptoms at the time, is not necessarily dispositive here at the motion to dismiss stage. A single [mild traumatic brain injury ("MTBI")] such as a concussion, and the symptoms that a discrete MTBI can manifest, are not the same "condition" as a disease such as CTE or another degenerative neurological disorder that may — or may not — be caused by repeated MTBIs.

*Id.* at *41-42.

{¶22} For this reason, the Connecticut federal district court found that the allegations of the complaint did not support the conclusion that the plaintiffs had been on notice of their alleged injuries, i.e., increased risk for latent, permanent neurological conditions, simply because they had suffered a concussion. Specifically, the court explained as follows:

> Here, however, it cannot be determined from the face of the Complaints and as a matter of law that the Pre-2012 Plaintiffs were on notice of an increased risk for a latent, permanent neurological condition merely because they knew they had suffered a concussion and/or sustained other minor brain trauma during the time they wrestled for WWE. The Pre-2012 Plaintiffs' knowledge, or lack thereof, of a connection [between]

repeated concussions or sub-concussive blows to the head and latent, permanent neurological conditions presents a material issue of fact that must be decided at a later date. Without knowledge of such a connection, Plaintiffs may have discovered "some injury," but not "actionable harm" because of their inability to tie head trauma that they knew they were sustaining to another party's breach of a duty to disclose increased risks for latent, permanent neurological conditions.

*Id.* at \*44-45.

{¶23} Similarly, the Minnesota federal district court in the hockey case explained as follows:

Assuming for purposes of this Motion that the NHL has correctly identified which states' statutes of limitations apply to Plaintiffs' claims, it is not clear from the face of the Master Complaint that those limitations periods have run. For example, Plaintiffs have alleged injuries in the form of "an increased risk of developing serious latent neurodegenerative disorders and diseases including but not limited to CTE, dementia, Alzheimer's disease or similar cognitive-impairing conditions," (Master Compl. ¶¶ 402, 425; see id. ¶¶ 38, 50, 56-57, 65, 72, 83, 425, 436, 444, 453); and "latent or manifest neuro-degenerative disorders and diseases," (id. ¶ 18). They have further alleged that, for example, "CTE is caused by repeated sublethal brain trauma of the sort Plaintiffs repeatedly suffered," (id. ¶ 210), including sub-concussive impacts that are not diagnosed as concussions and which are sustained by the thousands by NHL players each year, (id. ¶¶ 216-17, 220); and that "brain injury and brain disease in

NHL retirees is a latent disease that can appear years or decades after the player experiences head trauma in his NHL career," (id. ¶ 407). Thus, when such injuries "occurred" or "resulted" are matters that cannot be determined from the face of the Master Complaint and are proper subjects of discovery.

*In re NHL Players' Concussion* at *17-18.

{¶24} Although these cases are not binding on this court, we find their reasoning instructive and applicable to the instant case.

{¶25} Here, plaintiffs allege a latent injury that Schmitz was not aware of until his diagnosis in 2012. The complaint further alleges that, prior to the diagnosis, Schmitz never understood or appreciated the nature of the risk of the subconcussive and concussive impacts he sustained; that he never understood that those impacts "significantly increased his risk of developing neurodegenerative disorders and diseases," and resulted in "latent effects" and "neurocognitive and neurobehavioral changes over time." The thrust of the complaint is not an injury for concussive and subconcussive impacts; instead, the complaint alleges an injury in the form of CTE and other neurological diseases that did not manifest until decades after Schmitz stopped playing football at Notre Dame.

{¶26} We find the Ohio Supreme Court's decision in *Liddell v. SCA Servs.*, 70 Ohio St.3d 6, 635 N.E.2d 1233 (1994), analogous and supports the application of the discovery rule in this case. In *Liddell*, the Ohio Supreme Court allowed a plaintiff to

proceed when he sought recovery for the latent effects of toxic gas exposure, even though the toxic gas had caused him to suffer adverse health effects immediately following his exposure.

{¶27} The plaintiff in *Liddell* was a police officer who was exposed to a hazardous substance while responding to a report of a large fire on board a truck that was transporting the substance. On the day of the incident, the plaintiff was treated at a hospital for smoke inhalation and shortly thereafter filed a workers' compensation claim seeking coverage of his medical bills associated with the incident, and also applied for a permanent partial disability award as a result of inhalation of the fumes. Within nine months of his exposure to the toxic gas, the plaintiff began to experience frequent sinus infections. Six years after the exposure, the plaintiff underwent surgery to remove a benign papilloma from his left nasal cavity. Then, one year after the surgery, a biopsy revealed a cancerous growth in the plaintiff's left nasal cavity. At that time, the plaintiff's physician advised him that there might be a connection between his cancer and his inhalation of the toxic fumes seven years earlier. Plaintiff subsequently filed suit against the truck's owner within two years of being advised of the connection between his cancer and his inhalation of the toxic fumes.

{¶28} The lower courts found that summary judgment in the defendant's favor was appropriate because the plaintiff had suffered adverse health consequences immediately upon being exposed to the toxic gas, and the plaintiff was aware of the exposure at the time it occurred. Consequently, the lower courts held that the plaintiff's

cause of action had accrued on the date of the truck fire. The Ohio Supreme Court reversed, finding that "the cancer could not be, and was not, discovered until after the applicable statute of limitations governing causes of action for bodily injury had expired." *Id.* at 8. The *Liddell* court determined that it needed to "look no further than [*O'Stricker*, 4 Ohio St.3d 84, 447 N.E.2d 727] to resolve the issue facing us today. *O'Stricker* cogently outlines the reasons for adopting a discovery rule in latent disease cases." *Liddell* at 12. The court further stated:

> Consistent with our reasoning in *O'Stricker*, this case does not represent the circumstance of a plaintiff sitting on his rights. Liddell could not, and did not, discover his injury, the cancer, before the two-year statute of limitations governing bodily injuries had expired. Moreover, had Liddell attempted to bring a cause of action for negligence in 1981, any specification of damages for cancer certainly would have been strongly opposed by SCA on the grounds that they were too speculative. Hence, under SCA's theory Liddell would be confronted with a dilemma. He could either meet the statute of limitations and file a claim for compensation more than four years *before* he discovered the disease, or, as he did here, file a claim at the time of discovery, which occurred more than four years *after* the statute of limitations had expired.

(Emphasis sic.)_ *Id.* at 13.

{¶29} As noted by the Tenth District in analyzing *Liddell*,

> The unanimous court in *Liddell* was apparently wholly untroubled by the fact that the plaintiff had immediately experienced adverse health effects from his exposure to the toxic gas, filed a workers' compensation claim arising out of his inhalation of the fumes, and later underwent removal of a benign nasal papilloma in the same region in which his cancer was later discovered. Instead, the court focused on the condition of which Liddell complained; that is, his cancer.

*Girardi v. Boyles*, 10th Dist. Franklin No. 05AP-557, 2006-Ohio-947, ¶ 44.

{¶30} Here, we must focus on the condition of which Schmitz complained — CTE. Like the plaintiff in *Liddell*, this is not a case of Schmitz sitting on his rights. According to the complaint, Schmitz could not, and did not, discover his CTE before the two-year statute of limitations governing bodily injuries had expired. Further, had Schmitz attempted to bring a cause of action for negligence in 1980, two years after he quit playing football at Notre Dame, any specification of damages for CTE certainly would have been strongly opposed by the defendants on the grounds that they were too speculative.

{¶31} For this same reason, we do not find that the allegations alleged in the complaint fall within the line of cases holding that a plaintiff's claim accrues when he or she is aware of the possibility of the injury, even though he or she may not be aware of the full extent of the injury. These cases do not involve latent injuries coupled with an issue of the plaintiff not knowing that the defendants' actions allegedly caused the complained injuries giving rise to the cause of action.

{¶32} For example, in *Pingue v. Pingue*, 5th Dist. Delaware No. 03-CA-E-12070, 2004-Ohio-4173, which both defendants argue controls, the plaintiff clearly knew the

identity of the perpetrator giving rise to his claims years before filing his lawsuit. Specifically, *Pingue* involves an action for assault, infliction of emotional distress, and unintentional infliction of emotional distress filed by the plaintiff-son against his father. According to the complaint, the son alleged that his father had physically abused him for 28 years, with the abuse ending in 1990. The son, however, did not file any action until March 6, 2003 — approximately one year after his neurologist informed him he had suffered an irreversible brain injury and suffered from post-traumatic stress disorder. The son also learned that he was at a greater risk of contracting Parkinson's disease and Alzheimer's disease as a result of his brain injury.

{¶33} The trial court granted the father's motion for judgment on the pleadings, finding that, although the son may not have understood the true extent of his injuries until March 2002, he knew he had been injured and knew the identity of the person who injured him at least since 1990. The appellate court agreed with this reasoning, noting that "[w]hat appellant has recently discovered is not that he was injured, but rather the extent of his injuries." *Id.* at ¶ 19. The court reiterated the principle that "if a discovery rule is applicable, the cause accrues when the plaintiff discovers her [or his] legal injury, even if she [or he] does not know the total extent of the injury." *Id.* at ¶ 20. Thus, in affirming the trial court, the court held that "the statute of limitations begins to run when the plaintiff knows both he has been injured, and the identity of the alleged perpetrator." *Id.* at ¶ 23.

{¶34} The link between the injurious conduct and the known perpetrator that was clearly present in *Pingue* does not exist in this case. Whereas the plaintiff in *Pingue* was clearly aware of the wrongful conduct giving rise to his claims for assault, intentional infliction of emotional distress, and unintentional emotional distress during the 28 years that his father was abusing him, the complaint in this case does not reveal that Schmitz was aware of any wrongful conduct until decades after he finished playing football. Schmitz did not know at the time that he was playing football that the defendants were allegedly negligent or allegedly concealing information from him. Nor did he know that he had suffered a latent injury caused by playing football. According to the complaint, Schmitz did not make this connection until his diagnosis — well after the time period to bring an action under the statute of limitations. Unlike the son in *Pingue*, this is not a case where the plaintiff sat on his rights for years, despite having the necessary facts to bring a legal claim earlier. The complaint does not allege facts that would allow this court to conclude as a matter of law that Schmitz discovered his legal injury as early as 1978, when he finished playing football at Notre Dame.

b.   *Exercise of Reasonable Diligence*

{¶35} The next question for us to answer is whether Schmitz exercised reasonable diligence to discover his injuries.

{¶36} In cases where the discovery rule applies, the statute of limitations typically beings to run either (1) "upon the date on which the plaintiff is informed by competent medical authority that he has been injured," or (2) "upon the date on which, by the

exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first." *O'Stricker*, 4 Ohio St.3d at 90, 447 N.E.2d 727.

{¶37} According to the defendants, even if the discovery rule applies, plaintiffs' claims are still time-barred. While plaintiffs maintain that the date of diagnosis controls, namely, December 2012, defendants argue that the face of the complaint establishes that Schmitz should have known of his injuries years earlier. According to Notre Dame, "the last possible trigger date for plaintiffs' claims is April 2010, when plaintiffs allege that NCAA made changes to its concussion treatment protocols."

{¶38} At this stage in the proceedings, however, we cannot say as a matter of law that Schmitz should have discovered earlier either (1) his injury or (2) that his injury was caused by the conduct of the defendants. While the complaint details published studies originating in the late 1920s and continuing well into the present, which expressly linked concussive and subconcussive impacts experienced in contact sports with serious neurological impairments and diseases, such as CTE, the complaint alleges that Schmitz never knew any of this information. Moreover, the complaint does not allege any facts that would have alerted Schmitz to his condition prior to his diagnosis in December 2012 or that his injury was the result of defendants' alleged tortious conduct. *Compare Sullivan v. Westfield Ins. Co.*, 5th Dist. Stark No. 2006CA00296, 2007-Ohio-4248, ¶ 33 (affirming trial court's decision not to apply discovery rule because defendant's motion for summary judgment established that plaintiff had knowledge of all the relevant facts at least 15 years earlier to have discovered the alleged fraud).

**{¶39}** Thus, without more facts or evidence in the record, we cannot say as a matter of law that plaintiffs' claims are time-barred. *See Barr v. Lauer*, 8th Dist. Cuyahoga No. 92497, 2009-Ohio-5563, ¶ 30 (finding the grant of summary judgment improper because the record did not conclusively establish that plaintiff failed to exercise reasonable diligence to discover the cause of action — "[w]hether or not the discovery rule is applicable to this case is an issue that can only be addressed after further facts are put in evidence").

### 3. Fraud Claims

**{¶40}** Under R.C. 2305.09, an action for fraud "shall be brought within four years after the cause thereof accrued." The statute further provides that the cause of action does not accrue "until the fraud is discovered." Defendants maintain, however, that plaintiffs' fraud claims are subject to the two-year statute of limitations contained in R.C. 2305.10 because the action is for bodily harm. We disagree. While Ohio courts have recognized that a plaintiff cannot couch a claim for bodily injury as a fraud claim simply as a means to extend the statute of limitations, this is not the case here. Plaintiffs' fraud claims are separate and distinct from the other claims — not merely a vehicle to extend the statute of limitations on plaintiffs' negligence/personal injury action. *See Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 56, 514 N.E.2d 709 (1987) ("As a cause of action separate and distinct from medical malpractice, a claim for fraud is subject not to the medical malpractice statute of limitations * * * but rather a four-year limitations

period for fraud.")   But regardless of what statute of limitations apply in this case, the claims are not time-barred because the discovery rule applies.

{¶41} Accordingly, because the complaint does not conclusively show on its face that the negligence and fraud claims are time-barred, we find that the trial court erred in dismissing those claims on statute of limitations grounds.

## IV.   Substantive Claims

{¶42} Having found that plaintiffs' tort claims are not time-barred, we must address the other grounds asserted by the NCAA in support of its motion to dismiss, namely, whether plaintiffs sufficiently pleaded claims for negligence and fraud to overcome a Civ.R. 12(B)(6) motion.

### A.   Governing Law

{¶43} The parties dispute what state's substantive law applies.   Although the NCAA makes a compelling argument that Indiana substantive law should apply based on an application of the Second Restatement of the Law of Conflicts, the NCAA nonetheless concedes that "the elements of plaintiffs' claims are substantially similar under Indiana and Ohio law."   The NCAA does not point to any conflict between the two states' laws on negligence and fraud.[3]

---

[3] In its motion to dismiss, the NCAA argued that Indiana law governs because the alleged injuries occurred in Indiana where Schmitz competed as a member of the Notre Dame football team and Indiana has the most substantial relationship to the claims asserted here. Aside from broadly asserting that Ohio has the most significant relationship to plaintiffs' claims and the facts of the case, plaintiffs did not dispute that the alleged injuries occurred in Indiana as advanced by the NCAA.   Our reading of the complaint supports the NCAA's

**{¶44}** "'Under Ohio law, if two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply.'" *Dana Ltd. v. Aon Consulting, Inc.*, 984 F.Supp.2d 755 (N.D.Ohio 2013), quoting *Mulch Mfg. Inc. v. Advanced Polymer Solutions*, *L.L.C.*, 947 F.Supp.2d 841 (S.D.Ohio 2013); *see also Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 474-475, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 25 (recognizing that "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken"); *Akro-Plastics v. Drake Industries*, 115 Ohio App.3d 221, 685 N.E.2d 246 (11th Dist.1996); *Carder Buick-Olds Co. v. Reynolds & Reynolds*, 148 Ohio App.3d 635, 2002-Ohio-2912, 775 N.E.2d 531 (2d Dist.) (finding that defendant failed to carry its burden of proving a conflict with forum state and therefore applying Ohio law to fraud claims).

**{¶45}** Accordingly, we apply Ohio law to determine whether plaintiffs have sufficiently pleaded negligence and fraud claims to survive a motion to dismiss under Civ.R. 12(B)(6).

### B. Negligence

---

position that Indiana has the most significant relationship to the lawsuit. But even if we were to apply Indiana law to the claims at issue, it would not change the outcome. Under either state law, plaintiffs' negligence and fraud by concealment claims should have withstood a motion to dismiss.

**{¶46}** The elements of a negligence claim are "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22, citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).[4]

**{¶47}** In its motion to dismiss, NCAA argued that plaintiffs' negligence claim should be dismissed because they did not allege a duty recognized by law. NCAA maintains that the complaint "offers no set of facts" to show that it "took affirmative and deliberate steps to assume a duty recognized by law specifically to prevent the injuries alleged by Schmitz." We disagree.

*1. Duty was Sufficiently Pleaded to Withstand a Motion to Dismiss*

**{¶48}** "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989).[5] Indeed, the Ohio Supreme Court has often stated that "the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from

---

[4] The elements of a negligence claim under Indiana law are identical. *See Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind.2011).

[5] Similar to Ohio law, the Indiana Supreme Court has set forth a three-part test balancing the following factors to decide whether a duty exists: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991).

a particular act, the court could find that the duty element of negligence is satisfied." *Wallace* at ¶ 23, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998); *Commerce & Industry* at 98; *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). The existence of duty may be established by common law, statute, or by the particular facts and circumstances of a case. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). In any case, the existence of a duty is a question of law for the court. *Mussivand* at 318.

**{¶49}** Additionally, Ohio courts have recognized a duty to use reasonable care arising from a party's voluntary undertaking. *See, e.g., McMullen v. Ohio State Univ. Hosps.*, 88 Ohio St.3d 332, 338, 725 N.E.2d 1117 (2000)*; Douglass v. Salem Community Hosp.,* 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107 (7th Dist.); *Elliott v. Fosdick & Hilmer*, 9 Ohio App.3d 309, 460 N.E.2d 257 (12th Dist.1983).[6]

**{¶50}** The NCAA moved to dismiss the negligence claim on the grounds that, under Indiana law, "colleges, fraternities and other on-campus entities —   from which the NCAA is even further removed — typically do not owe 'a general duty of care' to students." The NCAA does not offer a single case, however, where an Indiana court has decided this issue at the pleadings stage. Nor do we find a single Ohio case that

---

[6] Similarly, Indiana law recognizes the same duty: "[a] duty of care may * * * arise where one party assumes such a duty, either gratuitously or voluntarily. The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Yost v. Wabash College,* 3 N.E.3d 509, 517 (Ind.2014).

stands for the broad proposition that the NCAA advances.  Further, while we recognize that the issue of duty is a legal determination, we cannot agree that, construing all allegations of the complaint as true, there is no set of facts consistent with the complaint that would allow the plaintiffs to recover on a negligence theory under either Ohio or Indiana law at this stage in the proceedings.

### 2. *Lanni v. NCAA is Distinguishable*

**{¶51}** Relying on the recent decision of the Indiana Court of Appeals in *Lanni v. NCAA*, 42 N.E.3d 542 (Ind.App.2015), the NCAA maintains that the facts of the complaint are insufficient to show that it took affirmative and deliberate steps to assume a duty recognized by law specifically to prevent the injuries alleged by Schmitz.  In *Lanni*, the plaintiff, a student-athlete who attended a NCAA sponsored fencing competition and suffered a serious eye injury, filed a negligence action against the NCAA (among other defendants).  The trial court ultimately granted summary judgment in favor of the NCAA, finding that the NCAA did not owe Lanni a duty of care under either theory advanced: a general duty of care or the voluntary assumption of a duty.

**{¶52}** Even if we agreed that Indiana law controlled, the decision in *Lanni* would not alter our decision.  Although we believe that there are a number of factual distinctions between the two cases, including the foreseeability of the harm and the public policy at issue, we find the most significant distinction is a procedural one: the *Lanni* court was reviewing a trial court's grant of summary judgment — not a motion to

dismiss.[7] Based on the evidence presented, the court found that the "NCAA's conduct does not demonstrate that it undertook or assumed a duty to actually oversee or directly supervise the actions of the member institutions and the NCAA's student-athletes." *Id.* at 553. In the instant case, however, we cannot yet reach that same conclusion after construing the allegations of the complaint in a light most favorable to the plaintiffs. Further, "a complaint need not contain every factual allegation that the complainant intends to prove, as such facts may not be available until after discovery." *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, ¶ 50 (8th Dist.).

{¶53} Here, the complaint alleges a scenario where (1) the NCAA voluntarily oversees and promulgates the rules and regulations for college football for the purpose of providing a competitive environment that is safe and ensures fair play, (2) that it knew of the risks of concussive and subconcussive impacts yet failed to warn or disclose such risks to Schmitz, (3) that it failed to promulgate rules to protect against such risks, and (4) that it placed its economic interests over Schmitz's safety, who in turn developed the latent brain disease of CTE. The complaint further alleges that "Schmitz relied upon

---

[7] In *Lanni*, the plaintiff was injured in an area designated for student-athletes to observe the fencing matches. Although the NCAA ultimately revised its designated areas, there were no allegations that the NCAA knew that its former designated areas posed a risk to student-athletes. Here, the complaint alleges that the NCAA has known for decades the risks associated with concussive impacts but has failed to disclose such risks to student-athletes. Based on the allegations of the complaint, which we must accept as true, the foreseeability of the harm to student-football players, such as Schmitz, is far greater. Further, this foreseeability factor also weighs in favor of strong public policy to impose a duty on the NCAA to take reasonable measures to guard against such risks.

the guidance, expertise, and instruction" of the NCAA regarding "the serious and life-altering medical issue of concussive and sub-concussive risk in football." The issue of whether plaintiffs can actually prove these allegations is not before us at this time. Applying Ohio's liberal pleading standard, we find that the trial court erred in dismissing the negligence claim at this stage in the proceedings. We cannot say that there is no set of facts consistent with plaintiffs' complaint that would impose a legally recognized duty upon the NCAA.

## C. Fraud

{¶54} Plaintiffs have also pleaded two types of fraud: fraudulent concealment and constructive fraud.

### 1. Fraudulent Concealment

{¶55} NCAA moved to dismiss plaintiffs' fraudulent concealment claim solely on the grounds that neither Ohio nor Indiana recognize a cognizable cause of action for "fraudulent concealment" or "fraud by concealment." We disagree.

{¶56} Under Ohio law, common law fraud requires proof of the following elements:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991).

{¶57} Although generally captioned simply as a "fraud claim," Ohio courts have consistently recognized "fraud by concealment" or "fraudulent concealment" when the fraud claim raises the issue of concealing a fact when a duty to disclose exists. *See, e.g., Lundeen v. Smith-Hoke,* 10th Dist. Franklin No. 15AP-236, 2015-Ohio-5086; *Layman v. Binn*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988); *Davis v. Kempfer*, 3d Dist. Union No. 14-95-31, 1996 Ohio App. LEXIS 1725 (Apr. 10, 1996); *see also Wilkey v. Hull*, 366 Fed.Appx. 634, 2010 U.S. App. LEXIS 3813 (6th Cir.2010) (discussing a claim for fraudulent concealment under Ohio law and applying fraud elements). The same applies under Indiana law. *See, e.g., Wright v. Pennamped*, 657 N.E.2d 1223, 1231 (Ind.App.1995) (recognizing an actionable claim for fraudulent concealment where there is a "duty to speak"); *Grow v. Indiana Retired Teachers Community*, 149 Ind.App. 109, 118, 271 N.E.2d 140 (1971) ("It is the law in Indiana that the failure to disclose all material facts, by a party on whom the law imposes a duty to disclose, constitutes actionable fraud. (Citations omitted). It is equally clear that the burden to show a duty to disclose is upon the party asserting fraudulent concealment."); *Loer v. Neal*, 127 Ind.App. 246, 254-255, 137 N.E.2d 728 (1956).[8]

---

[8] While we acknowledge that "fraudulent concealment" is an equitable tolling doctrine under Indiana law, we do not agree that Indiana courts refuse to recognize a claim of fraud based on a defendant's act of concealing a fact when a duty to disclose exists. To the extent that the NCAA moved to dismiss Count II — a fraud claim captioned "Fraud by Concealment/Fraudulent Concealment" — solely on the grounds that neither Indiana nor Ohio recognize such a claim, we find its argument fails.

{¶58} Despite not raising this argument in the trial court below, the NCAA now argues on appeal that the complaint is "completely devoid of any particularized allegations that the NCAA intended to deceive Schmitz into engaging in conduct which the NCAA knew would be harmful." The NCAA contends that the claim therefore failed to comply with Civ.R. 9(B), thereby justifying the trial court's dismissal of the claim. We disagree.

{¶59} As to this element of the claim, the complaint specifically alleges, among other things, the following:

(1) The NCAA "knew that repetitive head impacts in football games and full-contact practices created a substantial risk of harm to student-athletes that was similar or identical to the risk of harm to boxers who receive repetitive impacts to the head during boxing practices and matches, and professional football players, many of whom were forced to retire from professional football because of head injuries."

(2) Despite such knowledge and awareness, NCAA "concealed these risks from their football players," including Schmitz, with the intent of misleading Schmitz "into believing he was safe and that he would not suffer any long-term debilitating cognitive injuries from playing football."

(3) The NCAA "intentionally concealed * * * the risks of concussive and sub-concussive impacts in NCAA games and practices, including the risks associated with returning to physical activity too soon after sustaining a sub-concussive or concussive impact."

{¶60} The complaint further alleges that although the NCAA "knew for decades of the harmful effects of concussive and sub-concussive events on student-athletes," including Schmitz, it ignored these facts and failed to institute a meaningful method of warning and/or protecting the football players, "most likely because the revenue from football was so great, and the business of college football so profitable."

**{¶61}** We find these allegations are sufficient to support the intent element of the fraud claim. Again, whether plaintiffs can actually prove these allegations is a separate issue not before us. Instead, as stated above, we must presume these allegations to be true for the purposes of examining a Civ.R. 12(B)(6) motion to dismiss. Thus, because plaintiffs sufficiently pleaded facts to support the intent element of a fraudulent concealment claim, we find no merit to the NCAA's argument and hold that the trial court erred in dismissing the claim.

2. *Constructive Fraud*

**{¶62}** The NCAA moved to dismiss plaintiffs' constructive fraud claim on the grounds that plaintiffs failed to satisfy Civ.R. 9(B) and plead the claim with the requisite particularity. Specifically, NCAA argued that plaintiffs "failed to plead a specific fiduciary or other special relationship recognized by law with the NCAA that could give rise to a claim for constructive fraud." We agree.

**{¶63}** Constructive fraud is defined as "a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Cohen v. Estate of Cohen*, 23 Ohio St.3d 90, 91-92, 491 N.E.2d 698 (1986). Unlike actual fraud, "'[c]onstructive fraud does not require proof of fraudulent intent.'" *Id.*, quoting *Perlberg v. Perlberg*, 18 Ohio St.2d 55, 58, 247 N.E.2d 306 (1969). A claim for constructive fraud, however, is dependent on a special

confidential or fiduciary relationship, thereby giving rise to a duty to disclose. *Cohen* at 92.

**{¶64}** A fiduciary relationship is defined as one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 384, 738 N.E.2d 842 (10th Dist.2000), citing *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996). But "the duty to speak does not necessarily depend on the existence of a fiduciary relationship." *Starinki v. Pace*, 41 Ohio App.3d 200, 203, 535 N.E.2d 328 (9th Dist.1987), citing *Cent. States Stamping Co. v. Terminal Equip. Co.*, 727 F. 2d 1405 (6th Cir.1984). "It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Terminal Equip. Co.* at 1409.

**{¶65}** Plaintiffs argue that the complaint sufficiently meets the "special relationship" requirement to support a constructive fraud claim based on their allegations describing (1) the NCAA's duty to protect Schmitz according to their contract, (2) the NCAA's superior knowledge, (3) Schmitz's reliance on such knowledge, and (4) the "unique relationship" between Schmitz and the NCAA, "which, among other things, regulated" Schmitz's participation in football.

**{¶66}** But unlike plaintiffs' negligence claim, the fraud claim must be pled with particularity pursuant to Civ.R. 9(B). Plaintiffs' broad statements simply do not

establish a "special relationship" under the law that would support a constructive fraud claim. To suggest that the NCAA maintains a "special relationship" akin to a fiduciary relationship with all of its 400,000 students who participate in intercollegiate athletics is simply not supported under the law. *See, e.g., Flood v. Natl. Collegiate Athletic Assn.*, M.D.Pa. No. 1:15-CV-890, 2015 U.S. Dist. LEXIS 134016 (Aug. 26, 2015) ("[W]hile the NCAA oversees some aspects of intercollegiate athletics it is not a fiduciary for the thousands of student athletes who participate in those sports, and may not be held to the legal standards of a fiduciary relationship.); *Knelman v. Middlebury College*, 898 F.Supp.2d 697, 718 (D.Vt.2012) (declining to impose a fiduciary relationship where the fiduciary would be required to protect diverse needs and interests, creating possibly unlimited liability); *see also Valente v. Univ. of Dayton*, 438 Fed.Appx. 381 (6th Cir.2011) ("Although the 'fiduciary relationship' definition is somewhat vague, our search of Ohio case law yields no instances where courts have applied it to the university-student context.").

{¶67} Thus, because the complaint fails to plead a specific fiduciary or other special relationship recognized by law that could give rise to a claim for constructive fraud, we find that the trial court properly dismissed this claim.

### D. Loss of Consortium

{¶68} Having found that the negligence and fraudulent concealment claims survive the NCAA's motion to dismiss, we likewise find that the trial court erred in dismissing Yvette Schmitz's loss of consortium claim against the NCAA. *See Bowen v.*

*Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93, 585 N.E.2d 384 (1992), *rehearing denied*, 63 Ohio St.3d 1442, 589 N.E.2d 46 ("a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury"). Additionally, because the plaintiffs pleaded cognizable torts against Notre Dame that are not time-barred, we further find that Yvette's loss of consortium claim against Notre Dame should not have been dismissed.

{¶69} In conclusion, we find that the trial court properly dismissed plaintiffs' breach of contract claims against both defendants as being time- barred and the claim for constructive fraud against NCAA only. As to the remaining claims, namely, negligence against both defendants, fraudulent concealment against both defendants, constructive fraud against Notre Dame only, and loss of consortium against both defendants, we find that the trial court erred in dismissing those claims at this stage.

{¶70} Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellees and appellants share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

LARRY A. JONES, SR., A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR